74 F.3d 1260
 40 Cont.Cas.Fed. (CCH) P 76,881
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Ernest L. LEVINE, Plaintiff-Appellant,
v.
The UNITED STATES and Roger W. Johnson, General Services
Administration, Defendants-Appellees.
 No. 95-1399.
 United States Court of Appeals, Federal Circuit.
 Jan. 19, 1996.
 
 Before NEWMAN, LOURIE, and SCHALL, Circuit Judges.
 DECISION
 PER CURIAM.
 
 
 1
 Ernest L. Levine appeals from the summary judgment of the United States District for the Northern District of Illinois, Eastern Division, holding that he did not meet the regulatory requirements to be qualified as a "regular dealer" in mattresses, and that such requirements were correct and reasonable. Levine v. United States, No. 91 C 2789 (N.D.Ill. July 19, 1993). We affirm.
 
 DISCUSSION
 
 2
 Levine was appointed under an agreement with the manufacturer of Select Comfort mattresses to be Select's exclusive representative for selling its products to government agencies. Levine did not maintain the mattresses in stock or take title to them. Rather, he solicited orders for mattresses and forwarded the orders to the manufacturer, who then shipped the mattresses to the customer and directly billed the customer.
 
 
 3
 Levine submitted an application to the General Services Administration (GSA) to have the Select mattresses included on the New Item Inventory Schedule (NIIS). The NIIS is a list of approved products that government agencies may buy directly from a manufacturer. In processing such applications, the GSA is required under the Walsh-Healey Act, 41 U.S.C. Sec. 35-45 (1988), to determine if the potential government contractor is a "regular dealer" of the goods. To be qualified as a "regular dealer," a contractor must be able to show:
 
 
 4
 (1) That the bidder has an establishment or leased or assigned space in which it regularly maintains a stock of goods in which it claims to be a dealer ...
 
 
 5
 (2) That the stock maintained is a true inventory from which sales are made; the requirement is not satisfied by a stock of sample or display goods ...
 
 
 6
 (3) That the goods stocked are of the same general character as the goods to be supplied under the contract ...
 
 
 7
 (4) That sales are made regularly from stock on a recurring basis ...
 
 
 8
 (5) That sales are made regularly in the usual course of business to the public, i.e., to purchasers other than Federal, State, or Local Government agencies; this requirement is not satisfied if the contractor merely seeks to sell to the public but has not yet made such sales ... and
 
 
 9
 (6) That the business is an established and going concern[.]
 
 
 10
 41 C.F.R. Sec. 50-206.53(b) (1995).
 
 
 11
 The GSA informed Levine that he was required to submit documents to prove that he met the regulatory requirements. After Levine failed to submit such documentation, the GSA issued a determination on April 19, 1991 that he did not qualify to be a "regular dealer" of mattresses. On May 8, 1991, Levine filed a protest, which was denied after he failed to provide convincing evidence.
 
 
 12
 The Small Business Administration (SBA) was notified of the GSA determination. The SBA informed Levine that, should he desire, it would conduct an independent survey to determine if he qualified to be a "regular dealer." In order to conduct the survey, the SBA requested from Levine evidence to prove that he qualified to be a "regular dealer." Since Levine did not respond to the SBA request, the SBA notified him that it "cannot disagree" with the GSA's decision and that it forwarded the case to the Department of Labor for final disposition. The Department of Labor reviewed Levine's protest and affirmed the decision of the SBA.
 
 
 13
 Levine then filed a complaint in the district court challenging GSA's determination that he was not a "regular dealer." On July 19, 1993, the district court granted summary judgment for the United States. The district court held that the GSA did not act in an arbitrary or capricious manner in denying Levine certification. The district court determined that Levine did not qualify as a "regular dealer" because he did not have a stock of materials and did not sell to customers other than government agencies. The district court found that Levine admitted in his deposition that he did not maintain a stock or inventory of mattresses. His failure to maintain an inventory, the district court held, would alone have precluded him from qualifying as a "regular dealer," inasmuch as four of the six requirements relate to inventory.
 
 
 14
 The district court also found that Levine did not meet the fifth requirement. See 41 C.F.R. Sec. 50-206.53(b)(5) (1995). Out of the 579 mattresses sold by Levine, the district court found that he sold 577 to a government agency, one to a furniture store, and another one to his nephew. Therefore, the district court concluded that Levine did not regularly sell to the general public. The district court thus concluded that Levine failed to meet the requirements to be considered a "regular dealer" and held that the GSA's denial of such certification was not arbitrary or capricious. The district court also held that the GSA regulations were "correct and reasonable," consistent with the underlying purposes of the authorizing legislation.
 
 
 15
 On September 7, 1993, Levine filed a notice of appeal to the Court of Appeals for the Seventh Circuit. On March 9, 1995, the Seventh Circuit summarily affirmed the district court's decision. On March 15, 1995, Levine filed a motion to vacate the Seventh Circuit's order and transfer the case to this court. The Seventh Circuit granted the motion on the ground that Levine had submitted a well-pleaded complaint under the Little Tucker Act, 28 U.S.C. Sec. 1346(a)(2) (1994), appeals concerning which are within our exclusive jurisdiction. 28 U.S.C. Sec. 1295(a)(2) (1994).
 
 
 16
 On appeal, Levine challenges both the agency's application of the requirements for "regular dealers" and their reasonableness. Such "agency determinations are to be upheld unless they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Federal Mogul Corp. v. United States, 63 F.3d 1572, 1579 (Fed.Cir.1995) (citing 5 U.S.C. Sec. 706 (1994)). As found by the district court, Levine admitted he does not maintain an inventory of mattresses. This fact alone means that he does not meet all the regulatory requirements to be a "regular dealer." See 41 C.F.R. Sec. 206-53(b) (1995). Accordingly, we conclude that the district court did not err in holding that the GSA's denial of certification was not arbitrary or capricious.
 
 
 17
 Levine also asserts that the requirements are unreasonable. We disagree. The district court found "the regulations defining 'regular dealer' to be consistent with the underlying purpose of the legislation," and noted that they have previously been held to be reasonable and not inconsistent with law. See, e.g., United States v. Davison Fuel and Dock Co., 371 F.2d 705, 711-14 (4th Cir.1967). Accordingly, we conclude that the district court did not err in upholding the agency.
 
 
 18
 Levine's complaint regarding the denial of "regular dealer" certification has now been reviewed by the GSA, SBA, Department of Labor, the United States District Court for the Northern District of Illinois, the Seventh Circuit, and this court. His free-swinging allegations of "vendettas" waged by "bureaucrats" and inflammatory comparisons to Nazi Germany do not change the fact that he has failed to meet the requirements of regulations properly issued under authorizing legislation. He who would do business with the government must meet the government's requirements.